IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**LUFTI SAID SAALIM,**      CASE NO. 3:21 CV 1481

    Plaintiff,

    v.      JUDGE JAMES R. KNEPP II

**WALMART INC., et al.,**

    Defendants.      MEMORANDUM OPINION AND ORDER

INTRODUCTION

This case arises out of Plaintiff Lufti Said Saalim's arrest by a Lucas County Sheriff's Deputy working in private security at Walmart. Plaintiff brings claims under 42 U.S.C. § 1983 against that Deputy, Jeffrey Bretzloff, as well as Lucas County Sheriff Michael J. Navarre, and the Board of Lucas County Commissioners ("Board of Commissioners") on behalf of Lucas County. He further asserts additional claims against Bretzloff (assault, battery, false arrest and imprisonment, and intentional infliction of emotional distress), and against the Walmart Defendants (Walmart Inc. and Wal-Mart Stores East L.P.) based on theories of negligent hiring, supervision, training, or retention, and vicarious liability. Currently pending before the Court is a Motion for (Partial) Judgment on the Pleadings by Defendants Bretzloff and Board of Commissioners. (Doc. 21). The Board of Commissioners seeks judgment on all claims asserted against them – Count II (*Monell* Liability under 42 U.S.C. § 1983); and Count III (*Canton* Liability for failure to train under 42 U.S.C. § 1983).[1] Bretzloff seeks judgment on Count VI

---

1. Defendant Board of Commissioners also asserts entitlement to judgment on the pleadings on Count I, but Count I is asserted only against Defendant Bretzloff. *See* Doc. 1, at 25.

(false arrest and false imprisonment). Plaintiff opposes (Doc. 25), and Defendants have replied (Doc. 27).

For the reasons discussed below, the Court grants Defendants' Motion.

BACKGROUND

This case arises out of Plaintiff's April 12, 2020 arrest at a Walmart Supercenter in Toledo, Ohio. *See* Doc. 1, at ¶ 1, 38-89.[2] Defendant Bretzloff effectuated that arrest and, Plaintiff alleges, used excessive force in so doing. *See id.*[3]

Following the arrest, Plaintiff was charged with misdemeanor charges of menacing (Ohio Rev. Code § 2903.22), resisting arrest (Ohio Rev. Code § 2921.33), and obstructing official business (Ohio Rev. Code § 2921.31), as well as a parking violation (Ohio Rev. Code § 4511.68). *See* Doc. 25-4.[4] Plaintiff subsequently pled no contest to a reduced charge of disorderly conduct and the other charges were dismissed. *Id.* at 2, 4-9.

An investigation by the Lucas County Sheriff's Office Internal Affairs Bureau ("IAB") charged Bretzloff with violating the Use of Force Policy. (Doc. 1, at ¶ 114-16). Bretzloff sought a hearing, and the Disciplinary Review Board agreed with the IAB's findings. *Id.* at ¶ 117-18.

---

2. The Court summarizes only those facts necessary to resolve the currently-pending motion.

3. Plaintiff submits additional evidence for this Court to consider in deciding the pending motion, including the body camera footage of the incident, the Lucas County Sheriff's Office Internal Affairs Bureau investigative materials and findings regarding the incident, and an article from the *Toledo Blade* regarding certain police certification standards. *See* Docs. 25-1, 25-2, 25-3. Defendants' claims are primarily legal, not factual, and the Court finds Plaintiff has not demonstrated the additional evidence he wishes the Court to consider – even assuming it would properly be considered on a Rule 12(c) motion – is relevant to the issues at hand.

4. Although the Court may not typically look beyond the pleadings in addressing a Rule 12(c) motion, the parties agree that the Court can consider the underlying state court criminal records. *See* Doc. 21, at 5; Doc. 25, at 5; Doc. 25-4; *see also, e.g., Rondingo, LLC v. Twp. of Richmond*, 641 F.3d 673, 680-81 (6th Cir. 2011).

Plaintiff brings claims against Bretzloff, as well as, *inter alia*, the Board of Commissioners. He contends the Board (among others) failed to adopt, maintain, and enforce adequate policies, procedures, discipline, and supervision, including adequate training regarding use of force, leading to the deprivation at issue here. *Id.* at ¶¶ 3, 158-82. Within this claim, Plaintiff asserts

> Lucas County, by and through its Board of County Commissioners, has the ability to appropriate funds for the training of the Lucas County Sheriff or Deputy Sheriffs, pursuant to O.R.C. § 307.72, and has the ability to operate or contract with a third party to operate law enforcement training schools or programs for the use of the Lucas County Sheriff or Deputy Sheriffs, among others, pursuant to O.R.C. § 307.75.

*Id.* at ¶ 164.

### STANDARD OF REVIEW

A motion for judgment on the pleadings under Federal Civil Rule 12(c) is reviewed under the same standard as a Rule 12(b)(6) motion. *Coley v. Lucas Cty.*, 799 F.3d 530, 536–37 (6th Cir. 2015). When considering either a Rule 12(b)(6) or 12(c) motion, this Court presumes all well-pleaded material allegations of the pleadings are true and draws all reasonable inferences in the non-moving party's favor. *Total Benefits Planning Agency v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

### DISCUSSION

Moving Defendants raise two arguments that they are entitled to judgment on the pleadings. First, the Board of Commissioners contends that all claims against it must be dismissed because it does not control or have supervisory powers over a county sheriff's office.

3

It therefore seeks dismissal of all claims against it (Counts I-III).[5] Second, Bretzloff seeks dismissal of the false arrest/false imprisonment claim against him (Count VI), asserting Plaintiff's no contest plea precludes such a claim. For the reasons discussed below, the Court agrees.

Lucas County Board of Commissioners

Defendant Board of Commissioners moves to dismiss all claims against them, arguing they have no statutory authority over the actions of deputy sheriffs such as Bretzloff.

"[A] municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Monell v. Dep't of Soc. Servs of City of New York*, 436 U.S. 658, 691 (1978) (emphasis in original); *DePiero v. City of Macedonia*, 180 F.3d 770, 786 (6th Cir. 1999). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 694; *see also Sova v. City of Mt. Pleasant*, 142 F.3d 898, 904 (6th Cir. 1998) (quoting *Monell*, 436 U.S. at 694) ("In other words, a municipality can be liable under § 1983 only where its policies are 'the moving force' behind the constitutional violation.").

When police officers inflict damage, a municipality can also be held liable for failure to train its employees. *Sova*, 142 F.3d at 904. To succeed on a failure to train claim, a plaintiff must establish: "that a training program is inadequate to the tasks that the officers must perform; that the inadequacy is the result of the city's deliberate indifference; and that the inadequacy is

---

5. As noted above, Count I is only asserted against Bretzloff, not the Board of Commissioners. *See* Doc. 1, at 25-27.

'closely related to' or 'actually caused' the plaintiff's injury." *Hill v. McIntyre*, 884 F.2d 271, 275 (6th Cir. 1989) (quoting *City of Canton v. Harris*, 489 U.S. 378, 391 (1989)).

Under Ohio law, a board of county commissioners has only the authority provided by statute. *See Rees v. Olmsted*, 135 F. 296, 299 (6th Cir. 1905); *State ex rel. Shriver v. Board of Comm'rs*, 148 Ohio St. 277, 277 (1947). "Powers explicitly granted to the board are to be strictly construed." *Slough v. Telb*, 644 F. Supp. 2d 978, 999 (N.D. Ohio 2009) (citing *Comm'rs v. Andrews*, 18 Ohio St. 49 (1868); *Treadwell v. Comm'rs*, 11 Ohio St. 183 (1860)); *see also Geauga Cty. Bd. of Comm'rs v. Munn Rd. Sand & Gravel*, 67 Ohio St. 3d 579, 583 (1993) ("A county is presumed not to have authority to regulate in a particular area, unless a statute affirmatively authorizes the regulation.").

And "Ohio law does not, expressly or impliedly, grant to a county board of commissioners supervisory powers over the activities of the county sheriff's department." *Slough*, 644 F. Supp. 2d at 999. "Therefore, a board of county commissioners has no liability for the actions of [sheriff's department] employees absent a showing that the board assumed supervisory or policymaking control over the sheriff's department in violation of statute." *Id.* (citing *Ridgeway v. Union Cty. Comm'rs*, 775 F. Supp. 1105, 1109–10 (S.D. Ohio 1991)).

Plaintiff relies on two statutes to argue the Board of Commissioners has statutory authority over deputy sheriffs such that his claim can proceed. *See* Doc. 25, at 9 ("The Board has statutory authority to appropriate funds for training – training which could have prevented this incident from occurring."); Doc. 1, at ¶ 164. The cited statutes permit the Board to appropriate funds for deputy sheriffs to attend training schools (Ohio Rev. Code § 307.72), and "may operate or may contract with an accredited university or college to operate" law enforcement training schools to be used by, *inter alia*, deputy sheriffs (Ohio Rev. Code § 307.75).

5

But federal courts in Ohio have repeatedly determined funding statutes are insufficient upon which to base § 1983 liability. *See Stack v. Karnes*, 750 F. Supp. 2d 892, 900 (S.D. Ohio 2010) ("The county commissioners cannot be held liable for their mere funding of the sheriff's office."); *Winston v. Cty. of Franklin*, 2011 WL 2601562, at *3 (S.D. Ohio) ("The Board's statutory authority is essentially limited to funding the detention center's budget, and constructing, leasing and/or purchasing juvenile detention centers. The Board, therefore, has no authority to either set policies or customs for the maintenance of detainees' safety. . . . because the Board did not have any final policymaking authority related to the maintenance of safety for detainees of the creation of the standards of safety, it cannot be held vicariously liable for actions of employees at the juvenile detention center in allegedly failing to meet safety standards through different policies and customs."); *Brown v. Voorhies*, 2008 WL 2397692, at *4-5 ("The county commissioners have no duty to control the sheriff in keeping a jail safe, and the fact that Ohio Rev. Code § 307.01(A) designates the board of county commissioners as the agency to determine the necessity of jail construction does not mean that such board has any control over the operation of a county jail."); *Schneider v. Franklin Cty.*, 2007 WL 9728908, at *5 (S.D. Ohio) ("The Board possesses a limited set of powers and duties dictated by statute. O.R.C. §§ 305, 307. As argued by Defendants, these powers and duties do not include the daily operations of the Sheriff's Office. Instead, pursuant to O.R.C. § 311 *et seq.*, the duly elected sheriff for the county is vested with the responsibilities of running the county jail, hiring deputy sheriffs, promulgating policies pertaining to deputy sheriffs, offering personnel training, and the provision of medical services."); *see also Slough*, 644 F. Supp. 2d at 999 ("[A] board of county commissioners has no liability for the actions of [sheriff's department] employees absent a showing that the board

6

assumed supervisory or policymaking control over the sheriff's department in violation of statute.").

Similarly here, Plaintiff has not alleged the Board of Commissioners had supervisory or policymaking control over the sheriff's department and its deputy sheriffs, only that it had the ability to provide funding for training. Thus, although the Board of Commissioners is a political subdivision subject to suit, *see* Ohio Rev. Code § 305.12, it is not a proper defendant to the § 1983 claims asserted against it here. As such, Defendant Lucas County Board of Commissioners' Motion for Judgment on the Pleadings as to Counts II (*Monell* liability under 42 U.S.C. § 1983) and III (*Canton* liability for failure to train under 42 U.S.C. § 1983) is granted.

Bretzloff – Count VI

Bretzloff contends he is entitled to judgment on Plaintiff's false arrest/false imprisonment claim due to Plaintiff's no contest plea. Plaintiff responds that the plea should not have preclusive effect on his present claims because he pled no contest to only one reduced charge in a plea deal, and because later-acquired information demonstrates he did not have a "full and fair opportunity" to litigate the issues of probable cause and the legality of his arrest.

"Federal courts sitting in diversity 'must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered.'" *Evans v. Pearson Enters., Inc.*, 434 F.3d 839, 849-50 (6th Cir. 2006) (quoting *Migra v. Warren City Sch. Dist. Bd. of Ed.*, 465 U.S. 75, 81 (1984)).

And Ohio courts have held that guilty and no contest pleas bar later actions for false arrest or false imprisonment. *See, e.g.*, *Courtney v. Rice*, 46 Ohio App. 3d 133, 136-37 (Ohio Ct. App. 1988) (a guilty finding in a criminal case bars an action for false arrest or imprisonment); *Favor v. Ohio State Univ.*, 2010 Ohio Misc. LEXIS 277 (Ohio Ct. of Claims) ("Under Ohio law .

7

. . '[a] guilty finding in a criminal proceeding, whether by trial or plea, constitute an absolute defense to an action for false arrest or false imprisonment.'") (quoting *Espy v. Sears, Roebuck & Co.*, 1976 Ohio App. LEXIS 8213 (Ohio Ct. App.)); *Carpenter v. Meade*, 1994 WL 64256, at *2 (Ohio Ct. App.) (finding where plaintiff pled no contest to charges, "reasonable minds to come to only one conclusion regarding plaintiff's claims of . . . false arrest and false imprisonment, and that conclusion is adverse to plaintiff.").

The Sixth Circuit Court of Appeals has similarly interpreted Ohio law as barring plaintiffs from later litigating false imprisonment claims after a no contest plea to charges of disorderly conduct in state court. *See Jackim v. Sam's East, Inc.*, 378 F. App'x 556, 561 (6th Cir. 2010) (citing *Walker v. Schaeffer*, 854 F.2d 138 (6th Cir. 1988) (plaintiff's no contest plea in state court collaterally estopped pursuit of § 1983 action for unlawful seizure based upon lack of probable cause for arrest as she conceded existence of probable cause in no contest plea)). As the *Jackim* court explained, "Plaintiff had the option of insisting upon a trial where [his] acquittal would have cleared the way for this lawsuit. [He] chose to forego [his] opportunity to litigate it by pleading no contest, and is precluded from taking a different position in this forum." 378 F. App'x at 562; *see also Lassen v. Lorain County*, 2014 WL 3511010, at *5 (N.D. Ohio) ("Allowing his unlawful detention claim to proceed would directly contradict the finding that he was indeed guilty for the assault for which he was arrested [and to which he pled no contest], because it would negate the probable cause for arrest that arose from the assault.").

Plaintiff contends that, in all practicality, he had no real choice. *See* Doc. 25, at 12 ("For defendants of limited financial means, a plea deal like the one offered to Saalim becomes a financially pragmatic decision rather than a decision of whether or not the State could prove its case beyond a reasonable doubt."). He contends that because of this, as well as later-acquired

8

information (an investigative determination that Bretzloff violated the Lucas County Sheriff's Office Use of Force Policy), he did not have a "full and fair opportunity to litigate" the issues related to probable cause or the legality of his arrest. *See id.* Notably, Plaintiff cites no caselaw for the proposition that a state-court defendant's later discovered facts or financial circumstances demonstrate the absence of a "full and fair opportunity".

The Ohio Supreme Court has explained: "The main legal thread which runs throughout the determination of the applicability of *res judicata*, inclusive of the adjunct principle of collateral estoppel, is the necessity of a fair opportunity to fully litigate and to be 'heard' in the due process sense." *Goodson v. McDonough Power Equip., Inc.*, 2 Ohio St. 3d 193, 200-01 (1983). As explained in a leading treatise:

> Today, the tendency is to allow preclusion unless the first court followed severely limited procedures or there is a clear and strong policy requiring independent redetermination by the second court. This concern with limited procedures anticipates and is often mingled with the more general proposition that lack of a full and fair opportunity to litigate may warrant denial of preclusion.

Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Juris. § 4423 (3d Ed.) ("Issue Preclusion—Quality of Initial Decision and Opportunity to Litigate"). Plaintiff was represented by counsel in his state court proceedings. *See* Doc. 25-4. And while the Court recognizes he had a difficult decision to make when offered a plea bargain in these circumstances, he did have a choice, and chose to enter a no contest plea. Although Plaintiff did not avail himself of it, there is nothing to suggest he was denied a full and fair *opportunity* to litigate the probable cause issue or that the state court followed severely limited procedures or denied Plaintiff his due process right to be heard.

9

Plaintiff's no contest plea therefore forecloses his ability to bring a false arrest or false imprisonment claim in this court. Bretzloff's Motion for Judgment on the Pleadings as to Count VI of the Complaint is granted.

In summary, Defendant Board of Commissioners is granted judgment on the pleadings as to Counts II and III of the Complaint. Defendant Bretzloff is granted judgment on the pleadings as to Count VI of the Complaint. Nothing herein impacts the remaining claims in this case: Count I (Fourth and Fourteenth Amendment claim under 42 U.S.C. § 1983) against Bretzloff; Counts II and III (*Monell* and *Canton* liability under 42 U.S.C. § 1983) against Sheriff Navarre and John Doe Defendants 6-10; Counts IV (assault), V (battery), VII (intentional infliction of emotional distress) against Bretzloff; and Counts VIII (negligent hiring, supervision, training, and/or retention), IX (vicarious liability), and X (punitive damages) against Walmart, Inc., Wal-Mart Stores East, LP, Justyn McNett, and John Doe Defendants 1-5, and 11-15, and 16-20. *See* Doc. 1.

## CONCLUSION

For the foregoing reasons, good cause appearing, it is

ORDERED that Defendants' Motion for Partial Judgment on the Pleadings (Doc. 21) be, and the same hereby is, GRANTED as set forth herein.

                                                  s/ *James R. Knepp II*
                                               UNITED STATES DISTRICT JUDGE