IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**LUFTI SAID SAALIM,**　　　　　　　　　　　　CASE NO. 3:21 CV 1481

　　　Plaintiff,

　　　v.　　　　　　　　　　　　　　　　　　JUDGE JAMES R. KNEPP II

**WALMART, INC., et al.,**
　　　　　　　　　　　　　　　　　　　　**MEMORANDUM OPINION AND**
　　　Defendants.　　　　　　　　　　　　**ORDER**

### INTRODUCTION

This case arises from Plaintiff Lufti Said Saalim's arrest by Defendant Lucas County Sheriff's Deputy Jeffrey Bretzloff working in private security at Walmart. This Court previously granted a motion for partial judgment on the pleadings from Defendants Bretzloff and the Board of Lucas County Commissioners and dismissed one of the claims against Bretzloff and all claims against the Board of Commissioners. (Doc. 33). Defendants Bretzloff, Lucas County Sheriff Michael Navarre, and Lucas County Sheriff's Deputy Justyn McNett have filed a second Motion for Judgment on the Pleadings (Doc. 45) to seek dismissal of all remaining claims against them. Plaintiff opposed (Doc. 48) and Defendants replied (Doc. 50). For the following reasons, the Court grants Defendants' Motion.

### BACKGROUND

Plaintiff's claims stem from his arrest on April 12, 2020, at a Walmart Supercenter in Toledo, Ohio. (Doc. 1, at 3). Plaintiff, who was working as a cab driver, dropped off two passengers and parked in the store's loading zone. *Id.* at 10-11. After a conversation between Plaintiff and a Walmart employee, Defendant Bretzloff was called to the scene. *Id.* at 11. Bretzloff

was wearing a body camera, which captured video footage of the following facts. *Id.* at 11-12; Doc. 24 (Notice of Manual Filing, Defendant Jeffrey M. Bretzloff's April 12, 2020 Body Camera Videos).

Bretzloff asked Plaintiff for his driver's license; Plaintiff asked Bretzloff why he needed to see it. Doc. 1, at 12; *see also* Body Camera, 0:14. After a few moments of conversation continuing in this vein – Bretzloff requesting the license, and Plaintiff asking why he needed to hand it over – Bretzloff opened the driver's side door of the cab, grabbed Plaintiff's arm, and tried to pull him out of the car. *Id.* at 13; *see* Body Camera, 0:42. Bretzloff drew his taser, pointed it at Plaintiff, told Plaintiff to exit the car, and threatened to use the taser. *Id.* at 14; *see* Body Camera, 0:49.

Plaintiff stepped out of the car; Bretzloff pushed Plaintiff into the side of the car, pressed his taser into Plaintiff's back, and told Plaintiff to "stop resisting". (Body Camera, 1:08-1:13). Plaintiff began to turn around and lift his hands. *Id.* at 1:20. Bretzloff spun Plaintiff to face the car again, pushed the taser back into his side, and told him to "stop resisting." *Id.* at 1:25. Bretzloff told Plaintiff to put his hands on the top of the car. *Id.* at 1:30. A few seconds later, Plaintiff lifted his hands from the top of the car. *Id.* at 1:35. Bretzloff reached for Plaintiff with a set of handcuffs in his right hand. *Id.* at 1:40. At 1:41, the camera lens was briefly obscured; when the footage was visible again at 1:43, the camera was on the ground facing up and showed Plaintiff had once again moved his hands off the car, out of Bretzloff's reach, and turned around to face Bretzloff. *Id.* at 1:41-43. Bretzloff then tased Plaintiff. *Id.* at 1:45.

Plaintiff fell back into the vehicle when he was tased. *Id.* at 1:50. Bretzloff tried to grasp Plaintiff's hands; Plaintiff tried to push him away. *Id.* at 1:51. A few seconds later, handcuffs were clearly visible in one of Bretzloff's hands; Plaintiff continued to push Bretzloff away. *Id.* at 1:59. Bretzloff again told Plaintiff to stop resisting; Plaintiff responded, "I'm not resisting." *Id.* Bretzloff

2

tased Plaintiff a second time while Plaintiff was still in the car. *Id.* at 2:01. Throughout the interaction, Plaintiff repeatedly said, "I'm not resisting", "What did I do wrong?", and "I did not do anything". *Id.* at 1:00-2:15.

At this point, Bretzloff handcuffed Plaintiff, pushed him to the ground, and then moved him into the backseat of a Sylvania Township Police vehicle with the assistance of several other officers who had been called to the scene. (Doc. 1, at 16).

After his arrest, Plaintiff was charged with misdemeanor menacing, obstructing official business, and a parking violation. *See* Doc. 25-4. Plaintiff pled no contest to a reduced charge of disorderly conduct; the other charges were dismissed. *Id.* at 2, 4-9.

The Lucas County Sheriff's Office Internal Affairs Bureau ("IAB") investigated the incident and charged Bretzloff with violating its Use of Force Policy. (Doc. 1, at 21). Bretzloff sought a hearing; the Disciplinary Review Board affirmed the IAB's finding. *Id.*

## STANDARD OF REVIEW

A motion for judgment on the pleadings under Federal Civil Rule 12(c) is reviewed under the same standard as a Rule 12(b)(6) motion to dismiss. *Coley v. Lucas County*, 799 F.3d 530, 536–37 (6th Cir. 2015). When deciding either motion, this Court presumes all factual allegations in the complaint to be true and makes all reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008). A complaint will only survive if it states a plausible claim for relief on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

Although the Court may not typically look beyond the pleadings in addressing a Rule 12(c) motion, the parties agree the Court can consider the underlying state court criminal records. *See* Doc. 21, at 5; Doc. 25, at 5; Doc. 25-4. Additionally, the Sixth Circuit "has taken a liberal view of

3

what matters fall within the pleadings[.]" *Armengau v. Cline*, 7 F. App'x 336, 344 (6th Cir. 2001). Documents "referred to in a complaint and central to the claim, [which are] attached to a motion to dismiss form part of the pleadings." *Id.* "[I]f extrinsic materials merely 'fill in the contours and details' of a complaint, they add nothing new and may be considered without converting the motion to one for summary judgment." *Id.* (citing *Yeary v. Goodwill Indus.-Knoxville, Inc.*, 107 F.3d 443, 445 (6th Cir. 1997)).

## DISCUSSION

After this Court's previous opinion and order, the following claims by Plaintiff remain: (1) a Fourth and Fourteenth Amendment claim under 42 U.S.C. § 1983 against Defendant Bretzloff; (2) claims of *Monell* and *Canton* liability under 42 U.S.C. § 1983 against Defendants Navarre and John Doe Defendants 6-10; (3) claims of assault, battery, and intentional infliction of emotional distress against Defendant Bretzloff; and (4) claims of negligent hiring, supervision, training, and/or retention, vicarious liability, and punitive damages against Defendants Walmart, Inc.; Wal-Mart Stores East, LP; McNett; and John Doe Defendants 1-5, 11-15, and 16-20. (Doc. 33, at 10). Defendants Navarre, McNett, and Bretzloff filed the instant motion to seek dismissal of all remaining claims. (Doc. 45, at 1).

This Court will discuss, first, the federal claim against Bretzloff; second, the federal claims against Navarre and John Doe Defendants 6-10; third, the state law claims against Bretzloff; and last, the derivative state law claims against McNett, the Walmart Defendants, and the remaining John Doe Defendants. Because the pleadings in this case include, discuss, and rely upon the video footage, the Court will consider it for the purposes of deciding the instant motion. *See, e.g.*, *Bailey v. Ann Arbor*, 860 F.3d 382, 387 (6th Cir. 2017).

4

Federal Claim Against Bretzloff

Plaintiff claims Bretzloff violated his Fourth and Fourteenth Amendment[1] constitutional rights. To bring a successful § 1983 claim, Plaintiff must allege (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law. *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006).

Bretzloff argues he is shielded from these claims by qualified immunity. Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is an affirmative defense; once a defendant raises it, the burden shifts to the plaintiff to demonstrate: (1) the defendant's acts violated a constitutional right; and (2) the right at issue was clearly established at the time of the defendant's alleged misconduct. *T.S. v. Doe*, 742 F.3d 632, 635 (6th Cir. 2014).

Plaintiff claims Bretzloff subjected Plaintiff to excessive force in violation of the Fourth Amendment by tasing him. (Doc. 1, at 25-27). While Bretzloff directly argues only the second prong of the qualified immunity inquiry – that he did not violate a clearly established right of Plaintiff's – this Court will examine both prongs of the issue.

Plaintiff cites Bretzloff's Sheriff's Office use of force policy violation as evidence he used excessive force in violation of the Fourth Amendment. *Id.* at 21. But "[t]he violation of an internal

---

1. Plaintiff's Complaint alleges no facts amounting to a violation of the Fourteenth Amendment other than those that comprise his Fourth Amendment claim. Because the Fourteenth Amendment claim duplicates the Fourth Amendment claim, it must be dismissed. *See Conn v. Gabbert*, 526 U.S. 286, 293 (1999) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)) ("[W]here another provision of the Constitution 'provides an explicit textual source of constitutional protection,' a court must assess a plaintiff's claims under that explicit provision and 'not the more generalized notion of 'substantive due process.'").

5

policy does not establish a constitutional violation." *Griffith v. Franklin Cnty.*, 975 F.3d 554, 582 (6th Cir. 2020). In the context of taser use by an officer, the Sixth Circuit has repeatedly held "that it is not excessive force for the police to tase someone (even multiple times) when the person is actively resisting arrest." *Rudlaff v. Gillispie*, 791 F.3d 638, 641 (6th Cir. 2015) (citing *Hagans v. Franklin Cnty. Sheriff's Off.*, 695 F.3d 505, 509 (6th Cir. 2012); *Williams v. Sandel*, 433 F. App'x 353, 363 (6th Cir. 2011)). Whether Bretzloff's actions violated a constitutional right depend upon whether Plaintiff was actively resisting Bretzloff.

On the second prong of the inquiry, Bretzloff argues his tasing of Plaintiff was not a clearly established violation of Plaintiff's Fourth Amendment rights, thus entitling Bretzloff to qualified immunity. Plaintiff bears the burden of showing that a right is clearly established in order to oppose a defendant's assertion of qualified immunity. *Cunningham v. Shelby Cnty.*, 994 F.3d 761, 765 (6th Cir. 2021). While this burden "does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 580 U.S. 73, 79 (2017).

Bretzloff's argument relies primarily on the recent Sixth Circuit decision in *Bell v. City of Southfield*. 37 F.4th 362 (2022). In this case, the Sixth Circuit held that when "indisputable video evidence[2] shows [the plaintiff] actively resisting [an officer]", the officer is entitled to the defense of qualified immunity against an accusation of excessive force for tasing the plaintiff. *Id.* at 368. In *Bell*, the Circuit Court noted the plaintiff "repeatedly pulled his left arm away from [the officer]

---

2. Typically, when qualified immunity is raised as a defense at the pleading stage, "the court must determine only whether the complaint adequately alleges the commission of acts that violated clearly established law." *Rondigo, LLC v. Twp. of Richmond*, 641 F.3d 673, 681 (6th Cir. 2022). But "when uncontroverted video evidence easily resolves a case, we honor qualified immunity's principles by considering the videos . . . to the degree the videos are clear and blatantly contradict or utterly discredit the plaintiff's version of events." *Bell*, 37 F.4th at 364.

to avoid the handcuff". *Id.* Bretzloff argues that in the instant case, as in *Bell*, because there is video evidence of Plaintiff resisting Bretzloff before Bretzloff tased Plaintiff, Bretzloff is entitled to qualified immunity. (Doc. 45, at 10).

The Sixth Circuit had ruled prior to *Bell* that being tased while actively resisting an officer is not a violation of a clearly established right – and that attempting to avoid being handcuffed constitutes active resistance. *See Hagans*, 695 F.3d at 509. Getting tased when not actively resisting, on the other hand, is a violation of a clearly established right. *Shumate v. City of Adrian*, 44 F.4th 427, 450 (6th Cir. 2022) (citing *Browning v. Edmonson Cnty.*, 18 F.4th 516, 525 (6th Cir. 2021)). The question in this case that resolves both factors, then, is whether the video evidence uncontrovertibly shows Plaintiff to be actively resisting Bretzloff just before he was tased.

A key factor in the inquiry of whether an individual is actively resisting is what they were doing immediately prior to the use of force. *See Shumate*, 44 F.4th at 447; *Rucinski v. Cnty. of Oakland*, 655 F. App'x 338, 342 (6th Cir. 2016) ("we are required to evaluate the reasonableness of officers' use of force by focusing on the moments immediately preceding that use of force"). Even if an officer arguably contributed to or created the situation, the court must evaluate only "the split second judgment made immediately before the officer used allegedly excessive force, not on the poor planning or bad tactics that might have created the circumstances that led to the use of force." *Reich v. City of Elizabethtown*, 945 F.3d 968, 978 (6th Cir. 2019) (citing *Livermore ex rel. Rohm v. Lubelan*, 476 F.3d 397, 406 (6th Cir. 2007)).

Plaintiff argues that he was merely noncompliant with Bretzloff's instructions and notes that "noncompliance alone does not indicate active resistance; there must be something more." *Eldridge v. City of Warren*, 533 F. App'x 529, 535 (6th Cir. 2013). That "something more" can be "a verbal showing of hostility, . . . a deliberate act of defiance using one's own body, . . . or [an

7

act of defiance using] some other mechanism". *Id. Eldridge* cites three other Sixth Circuit cases in which an individual was found to have actively resisted an officer, which Plaintiff argues demonstrate his own conduct does not rise to the level of active resistance. (Doc. 48, at 11).

Plaintiff is correct that the conduct of the individuals in the cited cases was largely more violent or erratic than his own. *See Caie v. West Bloomfield Twp.*, 485 F. App'x 92, 93-94 (6th Cir. 2012) (individual was intoxicated, suicidal, talking aloud about ways to get officers to kill him, and laying on his arms so officers could not handcuff him); *Foos v. Delaware*, 492 F. App'x 582, 584-86 (driver in a vehicle crash rocked back and forth in the driver's seat, continued trying to accelerate, and repeatedly flailed his arms); *Hagans v. Franklin Cnty. Sheriff's Off.*, 695 F.3d 505, 507 (6th Cir. 2012) (individual ran around erratically while screaming, "locked his arms tightly under his body" after being wrestled to the ground, making it impossible for officers to handcuff him).

But the primary instigator for the officers' use of a taser in each of these cases was the individuals' movements that, whether deliberately or not, made it impossible for officers to handcuff them. *Caie*, 485 F. App'x at 94 ("They repeatedly ordered Plaintiff, who was laying on the ground with his arms underneath his body, to move his hands behind his back so that they could handcuff him. Plaintiff did not comply. [One officer] removed the probes from his taser and applied the taser once in drive-stun mode to the left side of Plaintiff's back."; *Foos*, 492 F. App'x at 585 ("At that point, [an officer] determined that, because Foos was moving around violently, they were going to have to use a Taser on him 'to try to contain him to an extent, control his muscle movement so we could either extract him or somebody could reach in to turn the ignition off to try to get control of the vehicle.'"); *Hagans*, 695 F.3d at 507 ("Hagans refused to be handcuffed. He lay down on the pavement and locked his arms tightly under his body, kicking his feet and

8

continuing to scream. . . . [an officer] unholstered his taser and applied it in drive-stun mode, pressing the taser directly against Hagans' upper back.").

That avoiding handcuffs by moving one's arms is enough to constitute active resistance was confirmed by *Bell*. 37 F.4th at 368. That is what Plaintiff did in this instance. When Bretzloff moved Plaintiff to face the car, pulled out his taser, and pressed it into Plaintiff's side, Plaintiff began to turn around and lift his hands. *Id.* at 1:25-1:35. Bretzloff spun Plaintiff to face the car again and pushed the taser back into his side. *Id.* at 1:25. Plaintiff then lifted his hands off the top of the car despite Bretzloff's instructions to keep them on the car. *Id.* at 1:35. After the camera fell to the ground, it showed Plaintiff once again moved his hands out of Bretzloff's reach and turned around. *Id.* at 1:41-1:45. Bretzloff did not tase Plaintiff until after this movement. *Id.* at 1:45.

When Plaintiff fell back into the car, he continued to push Bretzloff's hands away; Bretzloff was clearly holding handcuffs. *Id.* at 1:50-1:59. At this point, Bretzloff tased Plaintiff a second time. *Id.* at 2:01. By 2:15 of the video, Bretzloff was able to handcuff Plaintiff. *Id.* at 2:15.

While Plaintiff's behavior leading up to his moment of resistance was clearly less violent than that in the cases he cites in his opposition brief, the turning of his body away from the car and toward Bretzloff and the movement of his arms to prevent Bretzloff from handcuffing him, which prompted Bretzloff to tase him, are consistent with behavior Sixth Circuit case law has classified as active resistance. Because Plaintiff was actively resisting Bretzloff, Bretzloff neither used excessive force in violation of the Constitution against Plaintiff nor violated any clearly established right of Plaintiff's; he is therefore entitled to qualified immunity for tasing Plaintiff.

Municipal Liability Claims

Plaintiff seeks to hold Lucas County Sheriff Michael J. Navarre and five unnamed defendants accountable for violations of his constitutional rights under § 1983 pursuant to theories of municipal liability via *Monell*.[3] (Doc. 1, at 27); *see Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658 (1978).

A municipality cannot be held liable under § 1983 solely because it employs an individual who committed a constitutional tort; for a *Monell* claim to prevail, the tort must have been caused by an official municipal policy. *Monell*, 436 U.S. at 691. In other words, a municipality is only responsible for its "own illegal acts", not those of its employees. *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986). Even when an individual officer is not held liable for an unconstitutional act (for instance, if an officer is afforded the defense of qualified immunity because he violated a constitutional right that was not clearly established), if that unconstitutional act came about because of a municipality's policy or custom, it can be held liable. *Wilson v. Morgan*, 477 F.3d 326, 340 (6th Cir. 2007). If there is no underlying unconstitutional act, however, a *Monell* claim cannot be maintained. *France v. Lucas*, 836 F.3d 612, 631 (6th Cir. 2016). Plaintiff must show (1) a constitutional violation, (2) existence of a municipal policy or custom, and (3) a direct causal link between that policy or custom and Plaintiff's constitutional deprivation. *Lilly v. Clarksville*, 510 F. App'x 374, 376 (6th Cir. 2013). The municipality's policy or custom must be "the moving force behind the injury alleged." *Gregory v. Shelby Cnty.*, 220 F.3d 433, 442 (6th Cir. 2000).

Plaintiff alleges Lucas County (1) "failed to adopt and/or become certified under an improved use-of-force policy for the LCSO, despite several other law enforcement agencies

---

3. Plaintiff initially sought to hold Lucas County liable under *Monell* as well; this Court previously dismissed the claims against the County. *See* Doc. 33, at 7.

adopting said policy"; (2) "failed to adequately discipline, revoke privileges [from], or terminate Bretzloff"; (3) "adopted and approved a disciplinary structure that allows law enforcement officers' internal record of policy violations to be routinely and systematically expunged, removing any accountability for their past actions"; and (4) "fail[ed] to adequately train law enforcement officers, including Bretzloff, on the proper use of force and effective de-escalation techniques". (Doc. 1, at 29-31).

As discussed above, because Plaintiff actively resisted Bretzloff, Bretzloff's tasing of Plaintiff was not a violation of the Fourth Amendment, let alone a clearly established one. *Rudlaff*, 791 F.3d at 641. Because Plaintiff does not show a constitutional violation, all claims based on municipal liability do not satisfy the first requirement of *Monell* and must be dismissed. *See Scott v. Clay Cnty.*, 205 F.3d 867, 879 (6th Cir. 2000) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)).

State Claims Against Bretzloff

Plaintiff brings state tort claims of assault, battery, and intentional infliction of emotional distress against Bretzloff. Bretzloff argues the statute of limitations dictates dismissal of each of these claims.

Under Ohio law, assault and battery are governed by a one-year statute of limitations. Ohio Rev. Code § 2305.111(B). Additionally, while the usual statute of limitations for a claim of intentional infliction of emotional distress is four years, "when the acts underlying the claim would support another tort, the statute of limitations for that other tort governs the claim for intentional infliction of emotional distress." *Crist v. Pugin*, 2008 WL 2571229, at *13 (N.D. Ohio). Because the acts underlying Plaintiff's intentional infliction of emotional distress claim are the same as

those comprising his assault and battery claims, the same one-year statute of limitations applies. The events of Plaintiff's complaint occurred April 12, 2020; his complaint was filed July 27, 2021.

Plaintiff argues various measures of Ohio law during the beginning of the COVID-19 pandemic (legislation by the Ohio General Assembly, an executive order by the governor, and a Supreme Court of Ohio administrative action) which tolled, "retroactive to March 9, 2020, all statutes of limitation, time limitations, and deadlines in the Ohio Revised Code and the Ohio Administrative Code until . . . July 30, 2020." *In Re Tolling of Time Requirements Imposed by Rules Promulgated by the Supreme Court & Use of Technology*, 158 Ohio St. 3d 1447 (Ohio Sup. Ct. March 27, 2020).

Ohio courts have interpreted these tolling measures as tolling actions which would have expired between March 9 and July 30, 2020, not cases with underlying facts occurring during that period. *See Roach v. Vapor Station Columbus, Inc.*, 2022 WL 2211529, at *3 (Ohio Ct. App.); *State v. Bender*, 2021 WL 2313421, at *3 (Ohio Ct. App.); *Johnson v. Ohio Dep't of Rehab. & Corr.*, 2022 WL 2286218, at *2 (Ohio Ct. App.) ("the Supreme Court . . . explain[ed] that the 'legislation and Supreme Court order toll only time requirements set to expire *during* the emergency period. Time requirements that are set to expire *after* the emergency period are not tolled.'"). Because Plaintiff's cause of action expired April 12, 2021 – after the emergency period – it was not tolled. All three of Plaintiff's state tort claims are therefore barred by the statute of limitations.

<u>Derivative State Claims</u>

Plaintiff's final remaining claims are claims of negligent hiring, supervision, training, and/or retention, vicarious liability, and punitive damages against Defendants Walmart, Inc.; Wal-

Mart Stores East, LP; McNett; and John Doe Defendants 1-5, 11-15, and 16-20. (Doc. 33, at 10). McNett moves for judgment on the pleadings in his favor as to these claims. (Doc. 45, at 3).

The four negligence claims – hiring, supervision, training, and retention – have identical elements under Ohio law. *See Herndon v. Torres*, 249 F. Supp. 3d 878, 887, n.3 (N.D. Ohio 2017). To prevail on any of these claims, Plaintiff must show:

> 1) the existence of an employment relationship; 2) the employee's incompetence; 3) the employer's actual or constructive knowledge of that incompetence; 4) the employee's act or omission that caused the plaintiff's injuries; and 5) the employer's negligence in hiring, retaining, training, or supervising the employee proximately caused the plaintiff's injuries.

*Id.* (citing *Sygula v. Regency Hosp. of Cleveland E.*, 64 N.E.3d 458, 471 (Ohio Ct. App. 2016)). The second element – the employee's incompetence – requires that "the employee is individually liable for a tort" against Plaintiff. *Fall v. LA Fitness*, 161 F. Supp. 3d 601, 610 (S.D. Ohio). When a plaintiff "has not suffered a deprivation . . . there can be no showing of 'incompetence,' or in turn, 'knowledge of incompetence.'" *Id.* Because, as this Court determined above, Bretzloff is entitled to qualified immunity and cannot be held liable against Plaintiff, neither can any Defendants sued for his malfeasance be held liable.

Similarly, under Ohio law, a party can only be held vicariously liable if the individual for whom the party is responsible is himself directly liable. *See Hayslip v. Genuine Parts Co.*, 420 F. Supp. 3d 666, 675-76 (S.D. Ohio). Because Bretzloff cannot be held directly liable, no party is vicariously liable for his actions.

Finally, Ohio law does not recognize "punitive damages" as a separate cause of action; it is a remedy. *Makoski v. Zimmer Holdings, Inc.*, 538 F. Supp. 3d 757, 763 (N.D. Ohio). No claim exists for this count of Plaintiff's complaint. McNett is therefore entitled to judgment on all remaining claims.

13

The Walmart Defendants have not filed a motion to dismiss or motion for judgment on the pleadings. Ordinarily, a court may not dismiss a complaint *sua sponte* "unless the court gives the plaintiff the opportunity to amend the complaint." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999). *Sua sponte* dismissal is proper, however, "where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend". *McKinzy v. Murguia*, 370 F. App'x 960, 961 (6th Cir. 2010); *cf. Quinn v. Shirey*, 293 F.3d 315, 325, n.4 (6th Cir. 2002) (finding permissible dismissal as to all defendants where argument made by one defendant applied to the other and plaintiff had an adequate opportunity to respond to the basis for dismissal). The state law claims against all Defendants in this case depend upon finding Bretzloff liable, which this Court has declined to do. The Court accordingly dismisses Plaintiff's claims against all Defendants.

## CONCLUSION

For the foregoing reasons, good cause appearing, it is

ORDERED that Defendants Bretzloff, Lucas County Sherriff Michael Navarre, and Lucas County Sheriff's Deputy Justyn McNett's second Motion for Judgment on the Pleadings (Doc. 45) be, and the same hereby is, GRANTED; and it is

FURTHER ORDERED that all remaining claims against Defendants Walmart, Inc.; Wal-Mart Stores East, LP; and John Doe Defendants 1-20 be, and the same hereby are, DISMISSED.

   s/ *James R. Knepp II*
UNITED STATES DISTRICT JUDGE